SCHOTT, Judge.
Plaintiff has appealed from a dismissal of her suit for damages for injuries she sustained in a fall at an A&P Food Store in New Orleans at about one o’clock in the afternoon on October 18, 1973. Defendant is the liability insurer of the store. The trial judge gave the following reasons for judgment:
“The law is clear that a storekeeper is not an insurer of his invitees, and negligence on the part of the storekeeper must be shown in order for plaintiff to recover. The Court is of the opinion that plaintiff in the instant case has failed to prove, by the preponderance of the evidence necessary for her to have done in order to recover, that there was any negligence on the part of the defendant’s insured.”
Plaintiff testified that she was pushing a shopping cart along an aisle when she slipped in a clear liquid substance which a store employee later found to be water. She said it was a puddle about 12 by 8 inches in size.
Her fourteen year old daughter, Myra, who was with plaintiff corroborated this testimony. The girl said that she had not seen this puddle before her mother fell.
Jesse Aucoin, the manager of the store, was not in the store at the time but he described the cleanup procedures as follows: A safety captain or an assistant inspects the store three or four times daily; another employee sweeps the floor three or four times daily; these employees enter the time of their inspections and sweepings on a log; each employee is instructed to clean *555 up anything he sees on the floor. Aucoin identified the log for the week ending October 20, showing inspections on the day in question at 10:15 AM and 12:45 PM, and sweepings at 8:45 and 11:30 AM. Ac- . cording to Aucoin, the employees who signed the log as inspector and sweeper on the day of the accident are no longer connected with the store and their whereabouts are unknown.
Gene Mayeaux, a stock clerk in the store on the day of the accident, testified as follows: He did not see plaintiff fall but shortly thereafter he found plaintiff sitting on the floor in an aisle between shelves of canned goods; he helped her up and found a spot of water about four inches in diameter; he also noticed that the back of her dress was wet; the floor was otherwise clean and he found nothing in the way of broken bottles in the area; after the accident he had an employee mop and clean up the spot. Mayeaux testified that plaintiff told him she fell after she caught her foot in the shopping cart. According to May-eaux, the store was swept every two hours.
Juanita Cipriano, the bookkeeper at the store, testified that when she got the report of plaintiff’s fall, which she did not see, she went to plaintiff and found her already standing; she saw water about the size of a grapefruit on the floor and a spot on the back of her dress; plaintiff told her she had caught her foot in the cart. On cleanup procedures, Miss Cipriano said' that the store is swept several times a day and the place where plaintiff fell had been swept 45 minutes .to an hour before she fell. She personally verified that the inspections and sweepings entered on the log were made and she signed the log as safety captain of the store.
In Kavlich v. Kramer, 315 So.2d 282 (La.1975) the Court reviewed the principles that the storekeeper owes an affirmative duty in the use of his premises to exercise reasonable care to keep the aisles, passageways and floors in a safe condition, and that this duty includes a reasonable effort to keep objects off of the floor which might give rise to a slip and fall. The Court found that Mrs. Kavlich slipped on a small piece of banana just inside the store’s entrance. Noting that she was in no position to know the circumstances under which the substance got there or to prove that it was there because defendant’s employees were negligent, the Court said:
“She has established clearly that the piece of banana was there when she entered the store; that she stepped upon the piece of banana; and that it caused her to slip, fall, and be injured. The burden then shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent.”
Similarly in Gonzales v. Winn-Dixie, 326 So.2d 486 (La. 1976), the Court said:
“. . . plaintiffs established that there was a spill of olive oil about two feet in diameter in the aisle where Mrs. Gonzales was shopping; that the oil came from a broken bottle near the olive oil shelf; that she did not see the oil spill; that she stepped into the olive oil; and that it caused her to slip, fall, and be injured.
“Upon proof of such facts, we recently held in Kavlich v. Kramer, supra, that the duty of going forward with the evidence to exculpate the store employees from negligence shifts to the store owner. When it appears that a third person dropped the foreign substance, the store owner must establish that periodic inspections made and other protective measures taken were reasonable. Implicit in the decision is a recognition that, in the self-service system, customers are prone to drop objects on the floor and that a customer who slips and falls on such an object is usually in no position to establish how long it has been on the floor.”
In the instant case the first question is whether plaintiff “has established clearly” *556 those facts which she must before the burden shifts to defendant to exculpate its insured from the presumption of negligence. Plaintiff established that she fell but there is a conflict as to why she fell, she and her daughter testifying that she slipped on a puddle of water, and two store employees saying that plaintiff told them that her foot got caught in the shopping cart. But even if this conflict is resolved in her favor and one accepts the premise that she stepped in a puddle of water before she fell, has she “established clearly” that this caused her to slip, fall, and be injured? A wet spot on an asphalt floor is not necessarily slippery as is a piece of banana or a spill of olive oil. There is no evidence that this floor became unusually slippery when wet. When the trial judge found that plaintiff failed to prove her case by a preponderance of the evidence perhaps he had some of these questions on his mind. Moreover, on initial cross examination of plaintiff she was asked whether she ever “had any other problems with falling” to which she replied: “In ’60 — about twelve or thirteen years ago I had a fall,” and when recalled for cross examination at the end of the trial she admitted that she fell down in a Winn Dixie Store in 1969 and made a settlement with them of her claim. One can only speculate on the effect this testimony had on the trial judge’s evaluation of plaintiff’s case. Perhaps he was convinced that plaintiff was unusually clumsy and prone to fall even where no hazardous condition existed.
Nevertheless, if these questions are ignored and one assumes that plaintiff sufficiently carried her burden of proof with the result that the burden shifted to defendant to exculpate its assured from the presumption of negligence I believe that defendant met this burden.
On this point, the Supreme Court said in Kavlich:
“Although there is testimony as to clean-up procedures this does not sufficiently discharge defendant’s burden in the instant case. The last scheduled clean-up procedure was two hours before plaintiff’s injury. We are concerned with what happened in that two-hour period and with what degree of reasonableness the employees of the store acted in that period of time. The two employees in the store at the time of the accident testified they could have seen the banana because they were in a position behind the cash registers and front counter to observe clearly the area where it was located. Obviously, the banana was observable. The employees testified that they were not extremely busy and that few customers had been in and out of the store during the two-hour period. Both employees testified they had traversed the area where the banana was located immediately before Mrs. Kavlich slipped and fell. One of them testified further that she was watching the floor that day, even at the time the plaintiff fell.
******
“We conclude that the defendants have not borne the burden of proving that they were reasonably prudent in their exercise of duty and care owed to a customer in a self-service grocery store. They should have seen that which was obvious to a careful observer. They should have observed that which they testified they were trained to discover. The defendant’s employees were negligent in failing to remove the piece of banana upon which Mrs. Kavlich fell.” (Our emphasis)
Thus, a defendant’s evidence on cleanup procedures must be weighed or evaluated in the light of the circumstances of each particular case. In Kavlich, evidence of a cleanup or inspection made two hours prior to plaintiff’s fall was insufficient considering the type of substance on which plaintiff slipped and its location, i. e., within plain view of and readily discernable by at least two of defendant’s employees. In Gonzales, the Court noted the weakness of *557 the evidence offered to show the reasonableness or sufficiency of defendant’s inspection procedures.
However, in the instant case defendant’s evidence of a sweeping of the spot where plaintiff fell no more than an hour before and of a systematic cleanup and inspection procedure is sufficient considering a puddle of water, which can accumulate from many sources in a supermarket, e. g., condensation of the atmosphere or dripping from frozen or other cold packages, which might not be preventable without constant mopping and sweeping and which, of itself, would not ordinarily create a highly slippery condition like the piece of banana in Kavlich or the olive oil in Gonzales. Finally, unlike Kavlich, this water was not in plain sight of employees but was away from the entrance or any such employee station between shelves of canned goods, and unlike Gonzales the puddle was not such an obvious hazard as olive oil next to a broken bottle. Considering all of these circumstances, and assuming that the burden did shift to defendant after plaintiff rested, I believe that defendant under all of the evidence exculpated itself from negligence.
I am mindful of the fact that the trial judge decided this case at a time when the last expression of the law was contained in Gonzales v. Winn Dixie, 309 So.2d 697 (La.App. 4th Cir.) which was reversed by the Supreme Court. He did not have the benefit of the law as most recently enunciated by the Supreme Court in Kavlich and Gonzales. Thus, he may have resolved the conflict between plaintiff and her daughter on one hand, and the store employees on the other, in favor of plaintiff, but decided the case in defendant’s favor based on the law then prevailing. He might reach a different conclusion today. Therefore, it is arguable that the case shoüld be remanded to the trial court for a decision." But the posture of the case at this point is much like we found it to be in Couto v. Oms, 319 So.2d 518 (La.App. 4th Cir. 1975), where we found that a jury was prevented from making a fair assessment of credibility of witnesses and finding of facts because of errors of law committed during trial. The Supreme Court reversed our decision to remand in Couto v. Oms, 323 So.2d 128 (La. 1975) and remanded the case to us for decision. In effect, we became the trier of fact. Under this scheme in the instant case, I am unable to say that either set of witnesses, plaintiff’s or defendant’s, lied; the case was a draw and plaintiff loses since she had the burden of proof.
Accordingly, the judgment appealed from is affirmed.
Affirmed
REDMANN, J., concurs with written reasons.
GÚLOTTA, J., concurs with written reasons.